UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KRISTEN M., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C21-5396-MLP <br><br> ORDER |

## I. INTRODUCTION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by failing to fully account for accepted medical opinions, finding she had no severe mental impairment, and discounting a lay witness statement. (Dkt. # 16.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II. BACKGROUND

Plaintiff was born in 1967, has a high school education, and has worked as a physical therapy assistant. AR at 29. Plaintiff was last gainfully employed in September 2017. *Id.* at 18.

On October 10, 2017, Plaintiff applied for benefits, alleging disability as of March 22, 2017. AR at 15. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff

ORDER - 1

requested a hearing. *Id*. After the ALJ conducted a hearing on July 14, 2020, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 15-30, 36-75.

The ALJ found Plaintiff engaged in substantial gainful activity from July to September 2017. AR at 18. The ALJ found Plaintiff had no severe mental impairments, and her severe physical impairments included carpal tunnel syndrome, left wrist impairment, and congenital rubella with complications of hearing loss, right eye vision loss, and heart disease. *Id*. The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work, using an assistive device if walking outside on uneven terrain, occasionally balancing, and frequently reaching overhead with the right arm. *Id.* at 21-22. She could not perform tasks "requiring very precise depth of field" or "extended oral communication in a work environment with very loud noise[.]" *Id.* at 22.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-3. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

### III.   LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

ORDER - 2

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

### IV.    DISCUSSION

**A.    The ALJ Did Not Harmfully Err in Assessing the Medical Evidence and Formulating the RFC**

Plaintiff contends the ALJ erred in assessing the medical evidence and failed to incorporate into the RFC all limitations from medical opinions the ALJ found persuasive. Because Plaintiff filed her claim after March 27, 2017, new regulations apply to the ALJ's evaluation of medical opinion evidence. The new regulations still require ALJs to explain their reasoning with specific reference to how they considered the supportability and consistency factors, 20 C.F.R. §§ 404.1520c(a)-(b), and that reasoning must remain legitimate. *See Thomas S. v. Comm'r of Social Sec.*, No. C20-5083 RAJ, 2020 WL 5494904, at *2 (W.D. Wash. Sept. 11, 2020). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

*1.    Upper Extremity Limitations*

Plaintiff contends the ALJ erred by failing to incorporate all upper extremity limitations opined by medical sources she deemed persuasive. (Dkt. # 16 at 2-5.) State agency medical consultants Normal Staley, M.D., and Debra Baylor, M.D., opined Plaintiff was limited to frequent reaching with her right arm in front, laterally, or overhead. AR at 85, 99. Examining

doctor Hayden Hamilton, M.D., opined Plaintiff was limited to frequent overhead reaching. *Id.* at 1099. The ALJ found all of these opinions "persuasive." *Id.* at 26-27. In the RFC, however, the ALJ only limited Plaintiff to frequent overhead reaching with her right arm, with no limitations on other directions or her left arm. *Id.* at 22. The Commissioner contends the error is harmless because, according to the Dictionary of Occupational Titles ("DOT"), each of the jobs the ALJ relied on at step five required no more than frequent reaching in any direction with either arm. (Dkt. # 20 at 8.) Plaintiff argues "the DOT does not specify the types of reaching required in each job[.]" (Dkt. # 21 at 1.) But the DOT provides that *no* type of reaching will be more than frequent for these jobs. *See* DOT §§ 239.567-010, 209.687-026, 706.687-010, 299.677-010, 323.687-014. Incorporating all opined reaching limitations would not have excluded any of the jobs the ALJ relied on at step five. The Court concludes the ALJ did not harmfully err by failing to incorporate all of Dr. Staley's, Dr. Baylor's, and Dr. Hamilton's reaching limitations into the RFC.

    2.    *Standing/Walking*

The ALJ found persuasive Dr. Baylor's opinion that Plaintiff could stand/walk six hours per day. AR at 26, 98. The ALJ rejected Dr. Hamilton's opined limitation to five hours and Dr. Staley's limitation to four hours. *Id.* at 27, 84, 1098. The ALJ reasoned Plaintiff had been able to work, standing up to eight hours per day, with the same "residual mild balance issues" due to a history of stroke and cardiac complications, and her "neurologic and cardiac conditions ha[d] been stable since the alleged onset date." *Id.* at 27.[1]

---

[1] In addition, the ALJ found Plaintiff "regularly demonstrated a normal gait on examinations since the alleged onset date." AR at 27. A normal gait for a short distance across a doctor's office does not, however, contradict the doctors' opinions that Plaintiff can only walk for four or five hours per day.

ORDER - 4

Plaintiff contends the ALJ erred because Dr. Hamilton's and Dr. Staley's opinions were better supported by and consistent with Dr. Hamilton's examination findings. Dr. Hamilton observed Plaintiff had an "unremarkable" gait but impaired balance, shown by her "difficulty with tandem walk" and positive Romberg test, and impaired lower-extremity strength. AR at 1097-98. Dr. Staley's report summarized Dr. Hamilton's examination and noted the tandem walk difficulty, positive Romberg, and impaired strength. *Id.* at 82. Dr. Baylor's report, on the other hand, noted Dr. Hamilton's findings of unremarkable gait and impaired strength, but failed to note the tandem walk difficulty and positive Romberg test. *Id.* at 96. Even assuming Dr. Hamilton's and Dr. Staley's opinions reflected this mix of clinical findings better than Dr. Baylor's opinions did, the ALJ based her light-work finding on other evidence as well.

The Commissioner contends the ALJ relied on a work hardening discharge report that concluded Plaintiff could perform light work. (Dkt. # 20 at 10.) The report, based on extensive functional testing and physical therapy over several months, specifically stated Plaintiff's "Functional Tolerance" for "[s]it/stand/walk is not restricted." AR at 1301. Plaintiff argues the ALJ only cited the work hardening report in discussing her ability to perform light work despite wrist impairments, not in assessing standing/walking. (Dkt. # 21 at 3.) The Court must consider the ALJ's decision as a whole, however, and can readily discern the connection between these sections. *Cf. Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) ("An error is harmless . . . 'if the agency's path may be reasonably discerned,' even if the agency 'explains its decision with less than ideal clarity'[.]" (quoting *Alaska Dep't of Envt'l. Conserv. v. EPA*, 540 U.S. 461, 497 (2004))). The ALJ cited the work hardening report as a reason to find Dr. Baylor's light-work opinion persuasive. AR at 26. Immediately following this section, the ALJ explained why Dr. Hamilton's and Dr. Staley's stand/walk limitations were less persuasive.

ORDER - 5

*Id.* at 27. The work hardening report supported Dr. Baylor's opinion and undermined Dr. Hamilton's and Dr. Staley's. This was a valid reason to find Dr. Hamilton's and Dr. Staley's stand/walk limitations less persuasive. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (inconsistency with objective evidence in the medical record is a specific and legitimate reason for rejecting the opinion of an examining doctor).

In addition, the ALJ cited Plaintiff's many years of work standing/walking eight hours per day, with no medical change affecting her ability to stand/walk since then. AR at 27. Conflict with Plaintiff's activities was another valid reason to discount Dr. Hamilton's and Dr. Staley's stand/walk limitations. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (inconsistency with the claimant's actual work activity is a proper reason to reject a medical opinion).

The Court concludes the ALJ did not err by discounting Dr. Hamilton's and Dr. Staley's stand/walk limitations. Inclusion of erroneous reasons was harmless error. *See Molina*, 674 F.3d at 1115.

> 3. *Balancing and Cane Use*

Plaintiff contends the ALJ erred by discounting Dr. Hamilton's opinion that she "should avoid balancing" because the opinion was well-supported by the record. AR at 1099. The ALJ limited Plaintiff to occasional balancing, and provided that she required "an assistive device if walking outside on uneven terrain." *Id.* at 21-22. The Commissioner contends any error is harmless because none of the jobs the ALJ relied on at step five require any balancing. (Dkt. # 20 at 10; *see* DOT §§ 239.567-010, 209.687-026, 706.687-010, 299.677-010, 323.687-014.) Because the jobs did not require any balancing, incorporating Dr. Hamilton's opinion into the

ORDER - 6

RFC would not have changed the disability determination. The Court concludes the ALJ did not harmfully err in failing to further limit balancing in the RFC.

    4.  *Vision*

  Plaintiff contends the ALJ erred by failing to include visual limitations in the RFC based on her difficulty with night vision, glare, and halos. (Dkt. # 16 at 9-10 (citing AR at 733).) Despite the difficulties, Plaintiff reported she was able to drive at night. AR at 733. Moreover, Dr. Staley and Dr. Baylor, who reviewed the cited records (*see id.* at 81, 95), opined no limitations related to night vision, glare, or halos. *Id.* at 85, 100. Plaintiff identifies no evidence or medical opinions the ALJ improperly rejected relating to these issues.

  In addition, because Plaintiff is blind in the right eye, she argues "monocular vision . . . typically produces generally recognized problems of depth perception issues[.]" (Dkt. # 16 at 10.) Plaintiff argues the ALJ's prohibition on "very precise depth of field" was inadequate. AR at 22. Plaintiff fails to explain what further limitations were required.[2] Plaintiff cites a January 2018 treatment record showing her left eye had "areas of inner retinal atrophy," optic nerve head "[t]emporal thinning," and "suspect[ed]" glaucoma, but fails to identify any resulting functional limitations. *Id.* at 736. Dr. Staley and Dr. Baylor also opined Plaintiff had no left-eye limitations. *Id.* at 85, 100. Moreover, four of the five occupations the ALJ relied on at step five, totaling hundreds of thousands of jobs, do not require any depth perception. *See* DOT §§ 239.567-010, 209.687-026, 299.677-010, 323.687-014. The Court concludes the ALJ did not err in assessing Plaintiff's visual limitations.

---

[2] Plaintiff contends the RFC should have included "specific and concrete terms regarding depth perception and related problems such as difficulty with glare, halos, and night vision[.]" (Dkt. # 16 at 11.) The RFC is not a description of impairments, however, but an assessment of functional capacity. *See* 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations.").

   5. *Hearing*

Plaintiff contends the ALJ erred by failing to fully account for her "speech recognition deficits." (Dkt. # 16 at 10.) The ALJ prohibited "jobs requiring extended oral communication in a work environment with very loud noise, but she can have normal oral communication in an environment similar to an office or a workplace that does not have very loud noise." AR at 22. Plaintiff contends she has "hearing loss notwithstanding the noise level," and her hearing aid "has picked up background noises at times instead of voices." (Dkt. # 16 at 10.) But none of this is evidence of functional deficits not accounted for by the RFC. The Court concludes Plaintiff has not shown the ALJ harmfully erred in assessing her hearing impairments.[3]

  **B.** **The ALJ Did Not Err by Discounting a Lay Witness Statement**

Plaintiff contends the ALJ erred by "ignor[ing]" the specifics of a lay witness statement. (Dkt. # 16 at 15.) Department of Vocational Rehabilitation ("DVR") counselor Marlene Swarts provided a letter noting the extensive DVR services, primarily "hearing aids, guidance and counseling," Plaintiff has received throughout her career. AR at 383. Ms. Swarts opined Plaintiff "would not have been able to maintain her employment" without these services and "[n]ow she has added impairments which she can't overcome to remain employed with even DVR assistance." *Id*. An ALJ may discount lay witness testimony by giving a germane reason. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). The ALJ discounted Ms. Swarts' disability assessment based on Plaintiff's "ability to work with her longstanding physical conditions, her medical improvement after the upper extremity surgeries, and her activities." *Id*. at 28.

---

[3] Moreover, hearing is not required at all for the housekeeper or production assembler occupations, which provide a total of over 200,000 jobs in the national economy. *See* DOT §§ 323.687-014, 706.687-010; AR at 30. Any error in failing to include stricter hearing limitations would be harmless.

ORDER - 8

Plaintiff contends "Ms. Swart was a direct witness of plaintiff's inability to deal with the demands of work caused by [her] impairments." (Dkt. # 16 at 15.) There is no dispute Plaintiff cannot perform her past work as a physical therapy assistant. *See* AR at 29. Ms. Swarts' opinion does not, however, undermine the ALJ's findings that Plaintiff can perform other, less skilled, less physically demanding work. The Court concludes the ALJ did not harmfully err in assessing Ms. Swart's lay witness statement.

C.  **The ALJ Did Not Err in Finding No Severe Mental Impairments**

Plaintiff contends the ALJ erred by finding her attention deficit hyperactivity disorder ("ADHD"), depression/anxiety, and unspecified "other" mental impairments were not severe. (Dkt. # 16 at 11-15.) An ALJ's failure to properly assess an impairment as severe at step two may be harmless where the ALJ adequately considered the functional limitations caused by that impairment. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Because the ALJ found in Plaintiff's favor at step two, she "could not possibly have been prejudiced" at that step. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). And in the RFC determination, Plaintiff fails to show prejudice because she identifies no functional limitations resulting from ADHD or other mental impairments. A claimant bears the burden to provide proof she is disabled and, on appeal, to show the ALJ erred. 20 C.F.R. § 404.1512(a); *Shinseki v. Sanders,* 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). The ALJ found that, even if Plaintiff had severe mental impairments, they did not preclude "simple, routine, unskilled" work such as the occupations the ALJ relied on at step five. AR at 21.

Plaintiff argues her testimony establishes her sitting was "limited, in part, by ADHD problems." (Dkt. # 16 at 12.) Plaintiff has not challenged the ALJ's discounting of her testimony, however, and thus cannot establish harmful error. Plaintiff contends DVR counselor Ms. Swarts'

ORDER - 9

lay witness statement establishes that, due to her ADHD, intensive services were "necessary in order to maintain her employment." (Dkt. # 16 at 12.) While Plaintiff is unable to perform her past work, Ms. Swarts' statement does not establish that Plaintiff could not perform other, less skilled work consistent with the RFC. Plaintiff argues the ALJ "ignore[d] plaintiff's limitations in persistence and pace" but fails to identify evidence of functional limitations in persistence and pace. (Dkt. # 16 at 13.) A mere diagnosis of ADHD does not establish functional limitations. Plaintiff also argues the skills she gained from DVR counseling "to manage ADHD while working as a therapy assistant would not likely be applicable in another job setting. This is confirmed by the vocational expert who stated plaintiff has no transferrable skills from her past work as a therapy assistant." (*Id*.) Persistence and pace are basic work skills, however, and not addressed under the rubric of transferrable skills. *Cf.* SSR 85-15, 1985 WL 56857 at *4 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions[.]"). The vocational expert's testimony does not establish that the persistence and pace Plaintiff demonstrated in her prior work would somehow vanish in another job. Plaintiff fails to establish the ALJ erred in assessing her ADHD.

      Plaintiff fails to establish any functional limitations based on other mental impairments. She cites a few treatment notes where providers noted Plaintiff's reported symptoms, such as anxiety, depression, poor sleep, and irritability, and diagnosed her with generalized anxiety disorder. (Dkt. # 16 at 14-15 (citing AR at 625-26, 636, 652-53, 785, 788).) But diagnoses and symptoms do not equate to functional limitations. Plaintiff fails to identify any significant, probative evidence of functional mental limitations that the ALJ erred in assessing. The Court concludes the ALJ did not harmfully err in assessing Plaintiff's mental impairments.

## V.  CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 12th day of November, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 11